May it please the court, counsel. My name is Hank Branham. I'm an assistant federal defender in the Great Falls office. I represented IMTD below, but I am here on behalf of all three of these young men. I'd like to reserve five minutes of my time for rebuttal. These cases involve three juvenile males from three different reservations in the District of Montana. And that's half of the six reservations that are subject to federal jurisdiction over Indian Country, and thus the Federal Juvenile Delinquency Act applies there. This is a case of statutory interpretation, and this court's review is de novo. The differences between the Federal Juvenile Act and adult prosecution are stark, and they are many. There is a line of cases by both the United States Supreme Court and this Supreme Court from the 1960s up into January of this year that have consistently held that the purpose of the Federal Juvenile Law is rehabilitation and treatment, not punishment. And those cases run from Inmate Galt to, again, U.S. Juvenile, whose initials were S.E. that was decided in January. A significant component of the rehabilitative process is the confidentiality provisions of the Federal Juvenile Act. There is a limited universe of those who are entitled to know of a federal juvenile proceeding. Requiring a juvenile to register as a sex offender is clearly contrary to the confidentiality provisions of the Federal Juvenile Act. As this court said in Juvenile Mail, the confidentiality provisions are quite essential to the Act's goal of achieving rehabilitation. Counsel, what's your view as to what Congress said in the statute? I mean, Congress, I guess, had to balance the need for registration to protect kids from sex abusers and the need or interest of juveniles in confidentiality. So in their statute, did they address this? My submission to the Court, Your Honor, is that by using the term conviction, I mean, that has a very specific meaning, and that's why I cited Deal in my 28J letter, that conviction means you have had the right to a jury, and that doesn't apply to a juvenile. I think this, what Congress said, and the government in its brief, Your Honor, cited some legislative comments in support of their position. I think one, that's like, as they say, drinking from a fire hydrant. That's a very small portion of an extended debate. Additionally, in those comments they've cited, the legislators all talked about the states, the state juvenile codes. In the portions the government has submitted, they've not mentioned anything about the Federal Juvenile Act. I think the statute can be fairly read to mean, because under the Federal Juvenile Act, and it's mandatory, it says shall, a young person shall be proceeded against under the Federal Juvenile Act, unless they affirmatively opt into the adult system, where they get the Fifth Amendment right to an indictment, and the Sixth Amendment right to a trial. But how do you reconcile that with the statutory language in section 16, 42 U.S.C. section 1691.8, which specifically refers to conviction, including certain juvenile adjudications? And that's just where I was trying to go, Your Honor. That that could be read to apply to a juvenile who had opted into the adult system. They're still a juvenile. They're still under 18 years of age or 18 years old. But it says, includes adjudicated. It says, I mean, tell me how I can read it your way, but this is the way I read it right now. It seems to explicitly reference adjudicated, includes adjudicated delinquent as a juvenile for that offense, but only if the offender is 14 years of age or older at the time of the offense. And the offense adjudicated was comparable to or more severe than aggravated sexual abuse. So it seems as though they expressly included adjudications, which would be contrary to the argument you're pressing, which is that it only applies to people who have been convicted under the, who have opted into the adult system. Well, the reason for that is they can't, Congress, can't just take away a person's Fifth or Sixth Amendment rights. And that's what it would seem under, respectfully, Your Honor's reading. Because if someone proceeds under the juvenile code, the law is clear that that's not considered a conviction. And specifically this court in Teige, T-I-G-E-H-E, I have no idea whether or not I'm pronouncing that correctly, came to that conclusion with respect to the Armed Career Criminal Act, that a juvenile, it's a change in status, but it's not a conviction. And for this 116.9118 to do what the government claims it does, I don't think Congress can do that when the juvenile has not had the constitutional protections of the right to an indictment, presentment to a grand jury and an indictment, and the right to a jury trial. And I think, and again that's the reason I submitted my 28-J on Neal, because in there the court, Justice Scalia writing, says for the purposes of that, a conviction, the term conviction, has to have some element of either a jury trial or waiving the jury trial to plead guilty. But in the juveniles, as the juvenile starts under the juvenile act, they don't have that. And again, the Federal Juvenile Act mandates its procedures unless the juvenile opts out and files a written statement with the advice of counsel that they want the adult proceeding, where then they will get the grand jury, they can be indicted, and they can have a jury trial. So I'm not sure I understood your briefs to be saying that this provision violates the Constitution. Well, in my reply brief in IMTD, I raised the due process argument. And in the opening brief in IMTD, I cited tidy, which held, where this court held under the armed career criminal, that it wasn't a conviction, a juvenile adjudication wasn't a conviction because they hadn't had a jury trial or the right to a jury trial. And to follow up on IMTD's due process claim, at his change of plea hearing, he was told by the court, in the juvenile proceeding, you have the capacity to keep your name out of the paper and avoid press consideration of what has happened. And at his disposition, he was told, this is a proceeding that is closed to the public. And the judge also told him that he was, quote, entitled to the benefits of the juvenile law, close quote. And that's at the sentencing transcript, page 8, and the excerpts on IMTD at 13. However, the district court then went on and required him to register. And registration is public. All right. So help me understand. So it seems to me from the legislative history, Congress intended to reach juveniles under certain conditions in this act. Are there any other cases which have construed these very provisions and concluded that they violate the Fifth or Sixth Amendment rights of the individual? The new SORNA provisions? I'm unaware of any. So this is the first case in the country that's adjudicated this? As far as I know, Your Honor. I mean, this court will be the first court, to the best of my knowledge, on an appellate level to decide this issue. It's kind of problematic that you raised the due process claim for the first time in your reply then. Well, that was in response, Your Honor, to the government's argument that the act only acts upon the juvenile, that their reading of the Juvenile Act was that it restricted the courts and government from disclosing this information, but the SORNA acted only on the juvenile. And my response was no, it's compelled. Well, if it does act only on the juvenile, then you probably have a stronger case under the Constitution because it's the juvenile that has the Fifth and Sixth Amendment rights. But under what happened in these cases, and specifically the district court called IMTD, if you don't do it, you're going into custody. So it's not a voluntary disclosure. He was specifically, the judge read all the terms of probation, which included registration, and told if you don't follow them, you're probably going into custody. So it's not, that's why I refute the government's contention, Your Honor, that it's somehow voluntary or that the act simply applies to the juvenile and that they're doing this of their own free will or their own volition. When it's my argument, faced with custody, they are not. Are there any principles or precedents that would help us decide the case if we conclude the statute is ambiguous? So if we buy your argument in part and we say, okay, the defenders have an arguable construction of the statute, but the government's got, you know, their argument too, and the statute's ambiguous. Are there any Supreme Court precedents that would give us guidance as to how the statute should be interpreted? I would submit that Deal does, United States v. Deal. This is your 28-J letter. Yes, Your Honor. And in that case, the court specifically construed conviction or talked about conviction. And I think that's a more specific reading than Fausto, which the government relies on, which talks about civil cases. And I think that's a significant difference. You do – courts do construe criminal statutes different than civil statutes. Some of the general rules, of course, are the same, but a defendant is entitled to the rule of lenity, whereas in a person claiming jobless benefits, which was Fausto, I don't know that they are.  You're welcome, Your Honor. Further, under this court's case of United States v. Eric B., which is from 1996, in that case, the court considered disclosure of certain juvenile information and said that there needs to be a balancing test, balancing of the disclosure versus the harm or whether or not it would support the rehabilitative process. So at the very least, I think these three persons were entitled to some sort of analysis by the district court, not just a flat, you have to register. There should have been a discussion and an analysis by the court of, here's why, when I look at the factors of your specific case, Mr. Initials, I believe it's in your best interest, it furthers the rehabilitative process that you disclose this. And that didn't happen in any of these cases. At this point, if there are no further questions, I'll save the rest of my time for rebuttal. Thank you. Thank you. Good morning. May it please the court and counsel, my name is Marcia Hurd and I'm an AUSA from the Billings, Montana office. I handled the first two cases, L.S. and I.T.M.D. in the court below and am arguing today also on behalf of AUSA Rebecca French, who handled the MMR case. First of all, this is not a due process argument. Due process was not raised in an opening brief in any of these cases. The arguments raised were simply that SORNA contradicts the confidentiality in the FJDA and that it violates the rehabilitative thrust of that statute and the sentence is more restrictive than needs to be for rehabilitation. And then I.T.M.D. also said that the registration only applies to convictions and an adjudication of juvenile delinquency is not a conviction. Otherwise, the L.S. and the MMR briefs are literally identical. So any due process argument that's been brought up belatedly in a reply brief is not before this court. The United States has not had a chance to address any due process arguments or issues. What is clear here is that Congress can and did change the confidentiality in the FJDA. They clearly under SORNA picked out what their thought was as to the oldest and the potentially worst sex offenders, those of age 14 or over, who committed aggravated sexual abuse and required them to register under SORNA. I think, Judge Wardlaw, your point that 42 U.S.C. section 16.911.8 specifically defines a federal adjudication of juvenile delinquency as a conviction shows exactly that they knew what they were doing. This was not to go to just states, but it also included federally convicted juvenile offenders. Well, I know that he only belatedly raised the due process argument, but even if we were to accept your statutory argument, and arguments change on appeal all the time, and it's a different case before the Supreme Court than it is before our court oftentimes, right? Sure. So why don't you just respond to the argument that Congress's enactment of that SORNA provision, although it specifically and within its power took away rights that it had previously given under the Federal Juvenile Adjudication Act, that it was nevertheless unconstitutional because there's no real conviction as we understand the term conviction when there's been all the due process rights of a conviction. And it's such a severe penalty because it's not just disclosure, it's actual registration for 25 years to life. It's more than really a condition of supervisory release. It could be up to a lifetime kind of requirement imposed on a juvenile. Absolutely, and having to go in in person and meet with people and let them know where you are, have your picture taken. 25 years to the rest of your life when you've not had all the safeguards of the Fifth and Sixth Amendments. Well, Your Honor, that's a huge topic that's hard to address on my feet in oral arguments when the issue really hasn't been raised. I know it is, and it's troubling that it's not been raised appropriately given that this is the first case in the country to indicate this issue. And it is. I've done just a little bit of kind of survey work because we do a lot of juvenile delinquency cases in the District of Montana and in the Ninth Circuit. And some of the other circuits, of course, have none of it, but nobody is at this point where they're on appeal raising this issue of SORNA and FJDA. So we have no other precedent to go by other than some of the comments that were in the one other juvenile case, of course, also in this circuit for the first impression, the SE case that talked about the ex post facto issue with regard to SORNA. And that case, you know, had issues and didn't get to the procedural and substantive due process and the non-delegation doctrine. And so had that been an issue here, it certainly could have been raised. It was raised by the same Federal Defender's Office in that case. And those arguments made, and the government had a chance to respond to that. So I don't feel like I'm in a position to be able to make, you know, good arguments for you here today about that issue. Counsel, let me ask this question. Would it be helpful if our panel were to order supplemental briefing from the government or from the defenders on the constitutional issue that was raised in the reply brief? Obviously, if we got a full set of briefing on it, it would be hard for the government to say, well, you know, we didn't have a chance to speak. But by the same token, it would sort of take you off the oral argument spot and it would let you consult with all those brainy colleagues in D.C. Who are smarter than me, that's for sure. I don't know about that, but they might feel they have something to say about this issue. I'm sure that they do because this is, while it's in the forefront here, it's a big issue in a number of areas simply because there's a lot of Indian country juvenile delinquency, sexual abuse prosecutions. Yeah, and I can see other arguments about it. And we know, you know, obviously we could declare Congress's action unconstitutional, but there's all sorts of other arguments I can see because they were well aware that it disproportionately affected one particular minority group in the country. When they enacted it, they said it. They did. So there's not just the fifth and sixth. In due process, there is equal protection as well that's not even remotely raised here. Exactly. Which, you know, obviously came up in discussions about the case in advance internally, but it's not raised. It's not raised. And I wonder, you know, what the government's position really is on this. Well, and those are all issues that, you know, are literally at this moment beyond my research and certainly beyond my pay grade because it definitely affects, you know, every Indian country juvenile prosecutor in the United States. And while we're a smaller number than people who do, say, drug cases or civil cases, it's an incredibly important issue. You know, I have more cases like this coming up, more juveniles that could be prosecuted in federal court who are 14 or over who commit or are alleged to commit aggravated sexual abuse. So it's not an issue that we should take lightly. That is certain. But it's also clear that Congress was absolutely crystal clear about the fact that this would apply to Native Americans, this would apply to federal courts and state courts, and that they absolutely intended in that weighing balance to reduce confidentiality the discussion. And we picked out what we thought was the worst discussion for us to give to you. So there is more certainly legislative history, but actually it's much more in favor of the government in terms of saying these kids are dangerous. I know, but I'm less concerned about the wiping out of rights that Congress gave in the first place than I am about the protections surrounding a conviction and can Congress really just take away all of those other rights as it pertains to a juvenile adjudication as opposed to a conviction. Sure. And that's absolutely understandable. I mean, they being Congress specifically promulgated a law that said when we say convicted, we are using this in a broad sense. We're not using it in a narrow sense like the Deal case talked about. It says convicted or any variant thereof used with respect to a sex offense included adjudicated juvenile or adjudicated delinquent as a juvenile for that offense, but then limited it to what they apparently thought were the older and more concerning cases involving aggravated sexual abuse and not abusive sexual conduct or sexual abuse of a minor, those kinds of things. And I think there are certainly some issues there. The problem is what we have is a very narrow argument that's been raised by all three separate federal defenders in three separate juvenile cases. And also we have, as I recall the facts of the cases, we have at least one that seems like to all of a sudden turn into an aggravated felony under the statute with all of those. It was not as serious as some of the others. I think that's absolutely accurate. LS, which is the first case, 30273, I mean, this was a juvenile who was 16, 14, maybe 13 and 11 months at the time of one sexual assault, and it was basically a long-term sexual assault grouping on one victim and then at age 16 continued to really aggravatedly sexual abuse a little five-year-old girl. So he had two victims over long periods of time. That's fairly serious. Very serious. And then IMTD was, again, also that was a juvenile who was 17. The victim was age four. Again, a very serious offense. And I think the one that you're referencing as being somewhat different is MMR because the defendant was 14 in that case, the victim was 11, and it was a one-time incident. So, you know, and we also have some other kind of interesting issues. In the LS case, LS admitted to the charge and agreed in his plea agreement to register as a sex offender, agreed that SORNA was applicable, signed the plea agreement. It was covered completely at his change of plea that he was going to have to register. He was certainly advised of that. It was in his pre-sentence report that he had to comply with SORNA, and he was then again at sentencing required to comply with that. And so he was certainly told all the way along from beginning to end because he pled with the plea agreement where it was in and it was covered at the change of plea. IMTD and MMR were in a different situation because it was not in their plea agreements. They pled straight up with no agreement. And it doesn't appear from the change of plea transcripts that that was covered with them at the changes of plea. But certainly with regard to LS, all of those protections, and he was told, he agreed. So there are some different issues there potentially. But, I mean, what's been raised in front of this court, you know, basically is that SORNA contradicts the confidentiality of the FJDA. And it does in one sense that it's in tension with, but, boy, Congress has made it clear there was a good reason for that, and they intended that and they intended to apply it to federal cases. So I think, you know, on those facts and the arguments that have been made, this court is in a position to be able to fairly clearly say this is not a close call. Okay. So I think we don't really need to hear much more argument on that, and I think what we really need to do is confer about the supplemental briefing. Certainly. And you're amenable to that. You welcome that, actually, probably. Certainly, rather than trying to argue on the fly with, you know, no brief and no ability to lay out those facts before the court, that would be much more preferable. If the court wishes to have additional briefing, we'd be happy to do that. All right. Okay? Okay, thank you. Thank you. You do have a little bit more time, if you feel you need to use it. Of course, we'd be amenable to supplemental briefing as well. A few things with respect to LS and the plea agreement. Courts say what the law is and what's legal, but a plea agreement doesn't mean if there's an illegal provision in the plea agreement, it's illegal, period. And there's no question these are serious cases. But it's also, I think, to respond briefly to what the attorney for the government said, but IMTD has only occurred once, and he got three years probation. MMR, who would only happen once to an older person, he gets two years in custody. So the point being, these are all very different cases. And in, at least IMTD, again, he was not, the court did not go through the juvenile colloquy with him that he might be subject to this. The best thing, of course, that Congress could have done was specifically amend 5031 at SEC, amend the Juvenile Act. Then, quite frankly, we wouldn't be here. Of course, that's not what they did. And, again, I suppose, if I understood Ms. Hurd correctly, I agree that what they've quoted, I think they help the defense or the juvenile as much as they do the government in arguing. It's certainly, you find it interesting, I guess, that the government cited Senator Kennedy. I'd be interested to know when the last time they did that was. But in his comments, he equates, he says there also needs to be funding for treatment, and I don't know that that's actually happened. I don't think that actually made it into the bill. So I don't think they can rely on his comments. Counselor, just from my perspective, I'm relatively less interested or persuaded by statements by any single legislator. Because, you know, those aren't law enacted by both houses and signed by the president. So, I mean, what's the legislative intent that's indicated by the statute itself in a purpose clause or a definitional clause? The Congress, in passing, sort of believed this would reduce sexual assaults, sexual crime. There's no arguing that. But when it is applied to juveniles, it is in such stark contrast to the existing statutes and the existing case law that, quite frankly, the court is in the position of, for the first time in the country, deciding these two very competing statutes. It's not an enviable position, but it's our submission that it is improper to require juveniles to register under SORNA because it's such a clear conflict with the confidentiality provisions of the Juvenile Act. But there have long been cases, I think, that say that a later in time statute can impliedly repeal something inconsistent with it in an earlier statute. But my reading of those cases, that's disfavored. It can happen, but it's disfavored. It's not the favored outcome. That's probably true. If there's nothing else, I thank the court for its time. Thank you, counsel. I think both counsel and the three cases will be submitted.
judges: Hall, Wardlaw, Gould